Filed 10/27/21  In re K.F. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re K.F., a Person Coming Under the Juvenile Court Law. | B308855 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 20CCJP04595A |
| Plaintiff and Respondent, | |
| v. | |
| B.G., et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Sabina A. Helton, Judge. Conditionally affirmed and remanded with directions.

Roni Keller, under appointment by the Court of Appeal, for Appellant B.G.

Paul A. Swiller, under appointment by the Court of Appeal, for Appellant N.F.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

―――――――――

Father N.F. and mother B.G. separately appeal from the juvenile court's jurisdictional and dispositional orders concerning their child K.F. (born November 2019). They do not contest the merits of those orders. Rather, parents challenge the juvenile court's finding that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) did not apply. Father denied American Indian heritage, but claimed Central American Indian ancestry through the Karuk tribe. A federally-recognized Karuk tribe is in California. Although father said his indigenous ancestry was Central American, parents contend the juvenile court failed to comply with its duty to further inquire into father's Indian heritage to determine if K.F. was an Indian child under ICWA. They also contend the court failed to ensure the provision of proper notice under ICWA to the federally-recognized Karuk tribe in California.

We agree further inquiry into father's and his family's native ancestry is necessary. Accordingly, we conditionally affirm the court's jurisdictional and dispositional orders and remand the matter for the limited purpose of ensuring ICWA compliance.

## BACKGROUND

Because parents' appeals raise only the issue of ICWA compliance, we give only a brief summary of the factual and procedural background.

2

1.      *Summary of current dependency proceeding*

In July 2020, police were called to the family's home concerning a domestic violence incident between father and mother's adult daughter, and between father and mother when mother intervened.  Father was slashing with a kitchen knife and superficially cut mother's wrist and arm.  He also punched mother.  Parents had a history of domestic violence.  Mother was issued an emergency protective order.  K.F. was asleep in paternal grandmother's upstairs unit during the incident.

The Los Angeles County Department of Children and Family Services (Department) received a report about the incident.  A social worker attempted to discuss the incident with mother and father, but they appeared to be evading the Department.  The Department obtained a removal order for K.F. and served it on father on August 28, 2020.[1]  The Department could not locate mother and K.F.

On September 1, 2020, the Department filed a petition under section 300 of the Welfare and Institutions Code[2] alleging father's violence against mother and mother's mental and emotional problems endangered K.F.  Mother surrendered K.F. to the Department on September 3, 2020.  K.F. was detained in foster care.

---

[1]      The Department also removed K.F.'s half-sibling K.G. (born May 2009) from mother.  K.G.'s father has sole custody of her through a family law order, and she is not a subject of this dependency proceeding or these appeals.

[2]      Statutory references are to the Welfare and Institutions Code.

The juvenile court convened a combined jurisdiction and disposition hearing on November 6, 2020. The court sustained one count of the petition against mother and father under section 300, subdivision (b). The court removed K.F. and ordered her to be suitably placed.

## 2. *Facts relating to ICWA inquiry*

A Department social worker asked paternal grandmother about potential Indian ancestry during an initial interview in July 2020. Paternal grandmother said the family was descended from Caribbean and Mayan tribes, but she did not know the specific tribe. The Department's detention report states ICWA "does or may apply."

At the September 8, 2020 detention hearing, the court noted father "indicates he has no Indian ancestry as far as he knows."[3] Mother had indicated K.F. may have possible membership or eligibility in a federally-recognized Indian tribe—the Karuk tribe—through father's ancestry, but had no Indian ancestry, as far as she knew, herself. The following colloquy between the court and father's counsel ensued:

Counsel: "The father is Central American Indian."

The Court: "Father said he has no Indian ancestry as far as – mother says she has no Indian ancestry as far as she knows. Father says he has Karuk tribe ancestry. Hang on a second."

Counsel: "I believe it's not an eligible tribe."

The Court: "It says a California Tribe[,] though."

_____

[3] Father's counsel checked "[n]one of the above apply" on father's ICWA-020 parental notification of Indian status form.

4

Counsel: "That's not what my client has indicated. It's a Central American tribe."

The Court: "Given father says he has no Indian ancestry, mother only identifies that father might have Indian ancestry, I'm going to find there is no reason to know the child is an Indian child within the meaning of ICWA. I find ICWA does not apply."

The juvenile court's September 8, 2020 minute order acknowledges parents each filed an ICWA-020 parental notification of Indian status form. The order states the court "does not have reason to know" K.F. is an Indian child under ICWA, and "does not order notice to any tribe or the BIA." The court ordered parents to keep the Department, their counsel, and the court "aware of any new information relating to possible ICWA status."

The Department's jurisdiction/disposition report noted the juvenile court found no reason to know K.F. was an Indian child under ICWA and did not order any notice to any tribe or the BIA. No further ICWA inquiry was made.

## DISCUSSION

When the facts are undisputed, we independently review whether the requirements of ICWA have been satisfied. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*).) We review the juvenile court's ICWA findings under the substantial evidence test and determine whether the juvenile court's order is supported by " 'reasonable, credible evidence of solid value.' " (*Ibid.*) We must uphold the juvenile court's orders and findings " 'if any substantial evidence, contradicted or uncontradicted,

5

supports them, and we resolve all conflicts in favor of affirmance.' " (*Ibid.*)

**1.** ***ICWA inquiry and notice requirements***

"ICWA reflects 'a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family.' [Citation.] Both ICWA and the Welfare and Institutions Code define an 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' " (*D.F., supra*, 55 Cal.App.5th at p. 565, fn. omitted.) "Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*).)

Under ICWA and related California law, the juvenile court and the Department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition is or "may be an Indian child." (§ 224.2, subd. (a); *D.F., supra*, 55 Cal.App.5th at p. 566.) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.) The Department's initial duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."

6

(§ 224.2, subd. (b).) At each party's first appearance, the juvenile court, in turn, must ask whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c); *D.F.,* at p. 566; Cal. Rules of Court, rule 5.481(a)(2)(A).) As part of that initial inquiry, the court also must require each party to complete the ICWA-020 form. (*D.F.,* at p. 566; Cal. Rules of Court, rule 5.481(a)(2)(C).)

A duty of further inquiry arises when the Department or the juvenile court "has *reason to believe* that an Indian child is involved in a proceeding." (§ 224.2, subd. (e), italics added.) Effective September 18, 2020, the Legislature added section 224.2, subdivision (e)(1) to explain a "reason to believe" exists "whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."[4] (§ 224.2, subd. (e)(1); see Stats. 2020, ch. 104, § 15, eff. Sept. 18, 2020; *In re T.G.* (2020) 58 Cal.App.5th 275, 290, fn. 14.)

This further inquiry "includes: 1) interviewing the parents and extended family members to gather required information; 2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which

---

[4]     We apply the law in effect at the November 6, 2020 hearing when the court made its jurisdictional findings and disposition orders from which parents appeal. Because the juvenile court has a continuing duty to determine whether ICWA applies, we can infer it implicitly reaffirmed on November 6 its earlier September 8, 2020 finding that ICWA did not apply. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 321 [applying law in effect at time of section 366.26 hearing].)

the child may be a member or eligible for membership in; and 3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility." (*D.F., supra*, 55 Cal.App.5th at pp. 566–567, fn. omitted; § 224.2, subd. (e)(2)(A)–(C); Cal. Rules of Court, rule 5.481(a)(4).)

Once the Department or juvenile court has "reason to know" an Indian child is involved, formal notice under ICWA must be given to the child's "parents or legal guardian, Indian custodian, if any, and the child's tribe." (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1).)

**2.** *Further inquiry is required*

Here, father denied *American* Indian heritage in his ICWA-020 form and at the September 8, 2020 detention hearing. At the hearing, through counsel, he asserted he was a Central American Indian through the Karuk tribe. Nevertheless, the court acknowledged the Karuk tribe was a federally-recognized tribe in California. Mother also thought K.F. might be eligible for membership in a federally-recognized tribe through father's Karuk ancestry. Relying on *Austin J.*, the Department argues the fact a federally-recognized tribe happens to share the same name as the tribe under which father claimed his Central American Indian ancestry—with no showing of any connection to the federally-recognized tribe—is insufficient to trigger a further duty of inquiry under section 224.2. (*Austin J., supra*, 47 Cal.App.5th at p. 889 ["Indian ancestry, without more, does not provide a reason to believe that a child is a member of a tribe or is the biological child of a member."].)

We disagree. Father's claim of heritage in the Karuk tribe —even if he believed the tribe was from Central America—

8

required the court to ensure the Department inquired further into father's claimed Karuk ancestry.  It was information "suggesting" father—and therefore K.F.—might be eligible for membership in an Indian tribe under ICWA.  (§ 224.2, subd. (e)(1).)

*Austin J.* is distinguishable.  First, that case was decided before the Legislature clarified the meaning of "reason to believe."  Second, the Department in *Austin J.* in fact asked the mother, who claimed possible Cherokee ancestry, if other relatives may have more information, but the other relative gave only similar information—that mother's maternal grandmother " '*may* have had Cherokee heritage.' " (*Austin J., supra*, 47 Cal.App.5th at p. 878, italics added.)  The appellate court concluded the information it had was " 'too vague, attenuated and speculative' " to indicate a possible tribal connection so as to support "a 'reason to believe' " the mother's children were Indian children under ICWA.  (*Id.* at pp. 888–889.)  Based on the record here, in contrast, father did not equivocate when he declared his ancestry in the Karuk tribe.  The question was whether father was correct in stating his ancestry arose from a Karuk tribe in Central America or whether he was mistaken, and his ancestry arose from a Karuk tribe in California.

"[T]he question of membership in the tribe rests with the tribe itself," however.  (*In re Damian C.* (2009) 178 Cal.App.4th 192, 199.)  Thus, father's ignorance of the Karuk tribe's federal recognition did not—in father's words—"absolve the Department's and court's duty to further inquire about [K.F.'s] Indian status." (See, e.g., *In re Andrew S.* (2016) 2 Cal.App.5th 536, 547 ["burden of developing . . . information" about Indian ancestry "is not properly placed on [the parent]

alone"; " 'finding of ICWA's inapplicability before proper and adequate ICWA notice has been given is not conclusive and does not relieve the court of its continuing duty . . . to inquire into a child's Indian status' "].)

For instance, the Department should have asked father and paternal grandmother if other paternal relatives might have more information about father's Karuk heritage. It then could better have assessed whether father's ancestry originated from California rather than Central America, as father had believed. The Department also could have contacted the Karuk tribe. Based on the record, it does not appear that the Department made any further inquiry. Nor does it appear the Department investigated whether a Karuk tribe exists in Central America.

In short, we agree with father that the court and Department failed to comply with their statutory duty to inquire further into K.F.'s possible status as an Indian child. We need not reverse the jurisdictional or dispositional orders, however, as there is not yet a sufficient showing that K.F. is an Indian child under ICWA. (See *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) Rather, we remand for the Department to comply with ICWA's inquiry requirements and, if applicable, notice provisions.

On remand, the Department is to discharge its duty of further inquiry under section 224.2, subdivision (e) and to prepare a report of its investigation for the court. As there was not a reason for the court to *know* K.F. was an Indian child based on father's claim of Central American Karuk ancestry, we do not order the Department to give formal ICWA notice to the Karuk tribe under sections 224.2, subdivision (f) and 224.3, subdivision (a)(5), as father argues we should. Rather, if—

10

after its further inquiry on remand—the Department obtains information providing a reason to know—as set forth in section 224.2, subdivision (d)—K.F. is an Indian child under ICWA, then the court must order the Department to provide the required ICWA notice(s).

## DISPOSITION

We conditionally affirm the court's jurisdictional and dispositional orders.  The matter is remanded to the juvenile court with directions to ensure the Department complies with the inquiry—and, if applicable, notice—provisions of ICWA and related California law, consistent with this opinion.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.


11